**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| ELLIE MAE FISHER,<br><br>    *Plaintiff,*<br><br>v.<br><br>CODY CAMPBELL, DUSTIN WOMBLE, ARCILIA ACOSTA, PAT GORDON, CLAY C. CASH, TIM CULP, SHELLEY SWEATT, DOUG MCREAKEN, DONALD SINCLAIR, and ELI HEATH, in their official capacity as Regents of The Texas Tech University System Board of Regents, and JACK WADE NOWLIN, in his individual and official capacity as Dean of The Texas Tech School of Law, JAROD GONZALES, in his individual and official capacity as Associate Dean for Academic Affairs, LARRY SPAIN, AMY HARDBERGER, ALLISON OUTENREATH, ALLY OWENS, and TERRI MORGESON, in their individual and official capacities as Faculty and/or Officers of the Texas Tech School of Law Honor Council,<br><br>    *Defendants.* | Civil Action No. 5:26-cv-00073-X |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

Introduction ............................................................................................................................1

Factual Background............................................................................................................... 2

Standard of review ............................................................................................................... 6

Argument and Authorities .................................................................................................. 6

    I.   An emergency temporary restraining order is not warranted because the reprimand has already been reported to TBLE. ........................................................................... 6

    II.  This Court lacks jurisdiction over Plaintiff's claim against most Defendants in this case.....................................................................................................................................7

    III. Plaintiff Is Unlikely to Succeed on The Merits of Her First Amendment Retaliation Claim.................................................................................................................................10

        A.  Plaintiff's claim fails under either test. ....................................................................... 11

            1.  *Pickering* applies because Plaintiff's work in the clinic makes her the functional equivalent of an employee................................................................... 11

            2.  Under *Pickering*, Plaintiff has failed to show a causal connection and that her interests prevail.....................................................................................................12

            3.  Under ordinary citizen, Plaintiff fails to show any adverse action by Defendants that was substantially motivated by her constitutionally protected activity. ................................................................................................15

                a)  Plaintiff fails to show she was engaging in constitutionally protected activity.................................................................................................................16

                b)  Defendants did not engage in viewpoint discrimination, and the Honor Council's decision and Dean's reprimand were reasonable in light of the Clinical Suite's purpose. ...............................................................................19

                c)  Even if strict scrutiny applies, Defendants have a compelling interest in maintaining professionalism in areas where clients could be present and the Honor Council's decision was narrowly tailored to serve that interest. ...............................................................................................................21

    IV. The Remaining Preliminary Injunction Factors Weigh Against Preliminary Relief. ........ 22

Conclusion ............................................................................................................................23

Certificate of Service...........................................................................................................24

TABLE OF AUTHORITIES

**Cases**

*AbbVie, Inc. v. Fitch,*
  152 F.4th 635 (5th Cir. 2025) ................................................................. 6

*Andersen v. McCotter,*
  100 F.3d 723 (10th Cir. 1996) ................................................................. 11

*Ark. Educ. Television Comm'n v. Forbes,*
  523 U.S. 666 (1998) ................................................................. 17

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ................................................................. 9

*Axson–Flynn v. Johnson,*
  356 F.3d 1277 (10th Cir. 2004) ................................................................. 18

*Bd. of Trs. v. Fox,*
  492 U.S. 469 (1989) ................................................................. 22

*Bishop v. Aronov,*
  926 F.2d 1066 (11th Cir. 1991) ................................................................. 18

*Bowman v. White,*
  444 F.3d 967 (8th Cir. 2006) ................................................................. 18

*Brawner v. Richardson,*
  855 F.2d 187 (5th Cir. 1988) ................................................................. 13

*Cherry Knoll, L.L.C. v. Jones,*
  922 F.3d 309 (5th Cir. 2019) ................................................................. 9

*Chiu v. Plano Indep. Sch. Dist.,*
  260 F.3d 330 (5th Cir. 2001) ................................................................. 16, 17

*Clark v. Prichard,*
  812 F.2d 991 (5th Cir. 1987) ................................................................. 6

*Connick v. Myers,*
  461 U.S. 138 (1983) ................................................................. 12, 13

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
  473 U.S. 788 (1985) ................................................................. 16, 17

*Estiverne v. La. State Bar Ass'n,*
  863 F.2d 371 (5th Cir. 1989) ................................................................. 16, 17

*Ex parte Young,*
  209 U.S. 123 (1908) ................................................................. 8

*Freedom From Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) ........................................................................16

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001)........................................................................................17

*Harris v. Victoria Indep. Sch. Dist.*,
168 F.3d 216 (5th Cir. 1999) ..................................................................11, 13

*Healy v. James*,
408 U.S. 169 (1972)...................................................................................... 22

*Heilrayne v. Univ. of Texas at Austin*,
No. 1:25-cv-640, 2026 WL 630966 (W.D. Tex. 2026) ................................. 8

*Hennessy v. City of Melrose*,
194 F.3d 237 (1st Cir. 1999)....................................................................11, 12

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
505 U.S. 672 (1992)......................................................................................16

*Jackson v. Wright*,
82 F.4th 362 (5th Cir. 2023) ......................................................................... 8

*Just. For All v. Faulkner*,
410 F.3d 760 (5th Cir. 2005) ........................................................................18

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) ...................................................................16, 20

*Kinney v. Weaver*,
367 F.3d 337 (5th Cir. 2004) ........................................................................10

*Kirkland v. Northside Indep. Sch. Dist.*,
890 F.2d 794 (5th Cir. 1989 .........................................................................12

*Lowery v. Mills*,
157 F.4th 729 (5th Cir. 2025) .......................................................................10

*M.A.L. v. Kinsland*,
543 F.3d 841 (6th Cir. 2008).........................................................................18

*Maryland v. King*,
567 U.S. 1301 (2012) ....................................................................................23

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ....................................................................... 8

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
760 F.2d 618 (5th Cir. 1985)......................................................................... 6

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) .................................................................................6, 23

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ................................................................................................... 9

*Nixon v. City of Houston*,
   511 F.3d 494 (5th Cir. 2007) ...............................................................................13

*PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*,
   418 F.3d 535 (5th Cir. 2005) ................................................................................ 6

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .............................................................................................. 9

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37 (1983) ......................................................................................... 17, 19

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968) ................................................................................... 11, 12, 20

*Rankin v. McPherson*,
   483 U.S. 378 (1987) ........................................................................................ 12, 13

*Roberts v. Haragan*,
   346 F. Supp. 2d 853 (N.D. Tex. 2004) ...............................................................18

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995)................................................................................... 17, 19, 20

*Santander v. Salazar*,
   133 F.4th 471 (5th Cir. 2025) ............................................................................. 9

*Smith v. Tarrant Cnty. Coll. Dist.*,
   694 F. Supp. 2d 610 (N.D. Tex. 2010)................................................................18

*Smith v. Tarrant Cnty.*,
   694 F.Supp.2d 610 (N.D. Tex. 2010) ............................................................15, 22

*Snyder v. Millersville Univ.*,
   No. CIV.A. 07-1660, 2008 WL 5093140 (E.D. Pa. Dec. 3, 2008) ...........................12

*Students for Just. in Palestine v. Abbott*,
   756 F. Supp. 3d 410 (W.D. Tex. 2024) ............................................................ 20

*Tex. A&M Queer Empowerment Council v. Mahomes*,
   772 F. Supp. 3d 792 (S.D. Tex. 2025)................................................................ 22

*Tex. All. For Retired Ams.v. Scott*,
   28 F.4th 669 (5th Cir. 2022) ............................................................................. 8

v

*Tex. Democratic Party v. Abbott*,
　978 F.3d 168 (5th Cir. 2020) ........................................................................... 8

*Uzuegbunam v. Preczewski*,
　592 U.S. 279 (2021) ........................................................................................7

*Valentine v. Collier*,
　956 F.3d 797 (5th Cir. 2020) ........................................................................23

*Waters v. Churchill*,
　511 U.S. 661 (1994)........................................................................................13

*Watts v. Fla. Int'l Univ.*,
　495 F.3d 1289 (11th Cir. 2007)......................................................................12

*Widmar v. Vincent*,
　454 U.S. 263 (1981) ........................................................................................17

## Other Authorities

Clinical Program promotional video, available at https://www.depts.ttu.edu/law/clinics-and-externships/clinics/index.php. ....................................................................19

Clinical Programs homepage, available at https://www.depts.ttu.edu/law/clinics-and-externships/clinics/. .........................................................................................12

Criminal Defense Clinic website, available at https://www.depts.ttu.edu/law/clinics-and-externships/clinics/crim/index.php.......................................................................12

Texas Tech School of Law Honor Code § 2.H, available at https://www.depts.ttu.edu/law/policies/honor-code.php.....................................................3

## INTRODUCTION

Plaintiff files this lawsuit under the guise of a First Amendment retaliation case when in reality she wishes to relitigate findings of fact and subsequent disciplinary reprimand put in her academic file due to her violation of the Texas Tech University School of Law Honor Code.

Importantly, Plaintiff's disciplinary reprimand was due to loud and disruptive celebration of the assassination of Charlie Kirk while in the Law School's Clinical Suite, which operates as a functioning law firm. The Honor Council held a hearing where Plaintiff was advised by counsel to determine whether Plaintiff violated Section 2.H. of the Honor Code which states that a "student may violate this Code by failing to *uphold professional or fiduciary obligations* including, but not limited to, performance related to clinical programs, student-bar association activities, leadership in student organizations, maintenance of financial records, and pro bono activities." App. 6 at Appx. 43–46, Ex. A (emphasis added). The Honor Council found Plaintiff violated this reasonable restriction—to act in a professional manner in the Law School Clinic—and recommended that the Dean issue a reprimand to be placed in Plaintiff's academic record. Plaintiff appealed to the Associate Dean Jarod Gonzalez, as was her right under the Honor Code. The appeal was denied, and Dean Jack Nowlin, after conducting his own independent investigation, issued a reprimand to be placed in Plaintiff's academic record.

Assuming—*arguendo*—that Dean Nowlin, Dean Gonzalez, and the Honor Code fact findings were all incorrect, there is still no First Amendment violation. There is no evidence that any Defendant discriminated against Plaintiff based on any viewpoint she expressed. Rather, all evidence points to the contrary, as Defendants state viewpoint was not considered. And surely it is reasonable to conclude that a loud and disruptive celebration of a public murder committed on a school campus would rise to the level of unprofessional behavior in the Law School Clinical setting.

Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction should be denied as there is no First Amendment violation here. Furthermore, the harm Plaintiff alleges is now moot as the reprimand has been finalized and reported to the Texas Board of Law Examiners in normal course. The Court should not entertain Plaintiff's attempt to relitigate

the findings of the Honor Council, Dean Gonzalez, and ultimately Dean Nowlin under the pretext of a First Amendment retaliation claim.

## FACTUAL BACKGROUND

On September 10, 2025, there were multiple reports that Plaintiff, Ellie Fisher, celebrated the assassination of Charlie Kirk while in the Law School's Clinical Suite during work hours. App. 6 at Appx. 43, Nowlin Decl., ¶ 6. This occurred while Fisher was a clinical student with a supervised practice card and thus able to represent clients in the Law School clinics under professional supervision. *Id.* The celebration was loud, overheard by others, and adversely affected the operation of the clinics. *Id.*

Professor Terri M. Morgeson, Clinical Instructor for the Family Law Clinic at the Law School, witnessed Fisher's celebratory conduct firsthand. Fisher entered the clinic loudly exclaiming, "This is the best day ever. I am so happy." App. 5 at Appx. 34–36, Morgeson Decl., ¶ 6. Her tone rose to a near-yell and was loud enough to be heard throughout the clinic hallway. *Id.*

Fisher proceeded down the hallway toward clinic faculty offices, continuing to speak at a disruptive volume. *Id.*, ¶ 7. Fisher then entered the doorway to Professor Stephens's office proclaiming "I am so happy. I'm having the best day ever." *Id.*, ¶¶ 6–7. When he asked why, Fisher responded, "Because Charlie Kirk was shot." *Id.*, ¶ 8. Stephens appeared visibly taken aback and instructed Fisher not to enter his office making statements of that nature. *Id.*, ¶ 9. Fisher's voice made it difficult for Morgeson to continue her discussion with her students, as Fisher's entire conversation with Stephens was within arm's length of the Family Law Clinic. *Id.*, ¶ 10.

A short time later, Professor Morgeson witnessed Fisher leave Professor Stephens's office and proceed to Professor Metze's office, standing in his doorway and raising her hands over her head and exclaiming, "They shot him." *Id.*, ¶¶ 11–12. Fisher entered Professor Metze's office, engaging in a conversation about the shooting, their voices were loud and clearly audible, carrying into the hallway. *Id.*, ¶ 14. During this conversation, they discussed the circumstances of the shooting and speculated about whether Charlie Kirk was deceased. *Id.*, ¶ 15.

2

Professor Morgeson returned to her office, closed her door, and continued to try to work. *Id.*, ¶ 16. Even with all doors closed, she could still hear laughter, giggling, and comments that she considered inappropriate in a professional clinic setting. *Id.*, ¶¶ 16–17. Their behavior limited Professor Morgeson's ability to work, and she was scared to call anyone. *Id.* Less than 10 minutes later, two students informed Professor Morgeson that they wished to leave the clinic early due to Fisher's noise and disruption and Professor Morgeson allowed them to do so. *Id.*

Later, when Professor Dwight McDonald, Clinical Instructor for the Criminal Defense Clinic at the Law School, returned to his office, Professor Morgeson immediately went to his office to tell him about Fisher's actions in the Law School clinic, including that Fisher loudly proclaimed, "They shot that mother fucker." App. 4 at Appx. 28–30, McDonald Decl., ¶¶ 4–5.

On September 12, 2025, Professor McDonald met with Dean Jack Wade Nowlin, Professor Metze, and Professor Larry Spain regarding the incident. *Id.*, ¶ 6. Professor Metze did not deny that Fisher participated in a loud, celebratory conversation regarding Charlie Kirk's assassination or that she made the statement, "they shot that mother fucker," while she was in the Law School Clinical Suite. *Id.*, ¶¶ 8–9. Professor Metze also did not deny that Professor Morgeson had to close her office door due to the loudness. *Id.*, ¶ 9.

On September 23, 2025, this matter was referred to Professor William R. Keffer, who serves as the Honor Code Investigator pursuant to part 4.B. of the Honor Code to investigate whether there was probable cause to believe Fisher violated section 2.H. of the Honor Code:

> Violation of Professional Duties: A student may violate this Code by failing to uphold professional or fiduciary obligations including, but not limited to, performance related to clinical programs, student-bar association activities, leadership in student organizations, maintenance of financial records, and pro bono activities. Conduct of this kind typically violates Principle One.

App. 3 at Appx. 22–26, Keffer Decl., ¶ 3 (quoting Texas Tech School of Law Honor Code § 2.H.[1]). During his investigation, Professor Keffer met with Professor Chapman and 18 other individuals identified in his report. *Id.*, ¶ 6. Professor Keffer's investigation did not consider any viewpoint

---

[1] Available at: https://www.depts.ttu.edu/law/policies/honor-code.php.

expressed by Fisher but rather focused solely on whether Fisher's behavior in the Law School Clinical Suite on September 10, 2025, was unprofessional conduct in violation of section 2.H. of the Honor Code. *Id.*, ¶ 6. Professor Keffer concluded there was probable cause Fisher violated the Honor Code and the matter should therefore be referred to the Honor Council for further disposition. *Id.*, ¶ 7, Ex. A.

On February 20, 2026, the Honor Council convened to consider whether Fisher's behavior and statements within the Clinical Suite publicly celebrating the assassination of public figure Charlie Kirk on September 10, 2025, violated the Honor Code. App. 7 at 276–78, Outenreath Decl., ¶ 4; App. 8 at Appx. 280–82, Owens Decl., ¶ 5; App. 9 at Appx. 284–86, Spain Decl., ¶ 5. On March 11, 2026, the Honor Council issued a report pursuant to Honor Code section 4.H., including findings of fact, conclusion as to the violation of the Honor Code, and recommended sanction. *Id.* at ¶ 6, Ex. A. The Honor Council found that statements endorsing or celebrating death or violence, particularly in a professional setting, are contrary to respect for the rule of law and violate ordinary standards of professional conduct. *Id.*, ¶ 9. The Honor Council did not consider the viewpoint of Fisher's comments in its decision. *Id.*, ¶ 9. The Honor Council, applying the clear and convincing evidence standard, concluded by majority vote of 3-1 that Fisher violated section 2.H. of the Honor Code and recommended a sanction of written letter of reprimand from Dean Nowlin to be placed in her permanent school record. *Id.*, ¶¶ 10–11.

On March 27, 2026, pursuant to Honor Code section 6, Associate Dean Gonzalez received a request to review the Honor Council's decision.[2] App. 2 at Appx. 10–11, Gonzalez Decl., ¶ 6,

---

[2] Pursuant to section 6 of the Honor Code, the Associate Dean may impose, modify, or vacate any sanction recommended, but cannot increase the severity of a sanction. The Associate Dean cannot modify or vacate the finding of a violation of this Code made by the Honor Council, except when the Associate Dean determines that the Council's finding is clearly erroneous. If the Associate Dean finds such an error, the Associate Dean will include the basis for this determination in his or her decision. The Associate Dean will send notice of his or her decision to the Dean, the student, the Honor Code Investigator, and the Chair of the Honor Council. The Dean will impose the sanction determined by the Associate Dean. There is no further right to appeal or review within the University.

Ex. A. Dean Gonzalez, after conducting a review pursuant to Honor Code section 6, determined that the Honor Council's finding was not clearly erroneous. *Id.*, ¶ 5, Ex. B. Dean Gonzalez also did not find that the Honor Council considered any viewpoint expressed by Fisher. *Id.* On April 13, 2026, Dean Nowlin sent a letter to Fisher serving as a formal reprimand for violation of the Honor Code. App. 6 at Appx. 43–46, Nowlin Decl., ¶ 15, Ex. G.

On March 17, 2026, the Law School received notification from the Texas Board of Law Examiners (TBLE) that Fisher applied for admission to the Bar of Texas and requested the completion of a reference form regarding the applicant to assist in completing an investigation. *Id.* at ¶ 11. On April 13, 2026, Dean Nowlin responded to TBLE's inquiry recommending against Fisher's admission to the Texas Bar. *Id.*, ¶ 15, Ex. H. Dean Nowlin's recommendation was based on three related reasons, none of which considered the viewpoint expressed by Fisher. *Id.*, ¶ 16, Ex. H, Ex. I. First, Fisher, as a clinical student with a supervised practice card, disrupted the clinical spaces with a celebration of a political assassination. *Id.* Second, she has refused to take responsibility or show any remorse for her unprofessional actions. *Id.* And, third, she has displayed dishonesty when discussing this incident in the Honor Code proceedings. *Id.*

In addition to the Honor Council's fact-finding, Dean Nowlin's Office conducted its own investigation, which occurred as part of a disciplinary investigation of Professor Metze. App. 6 at Appx. 43–46, Nowlin Decl., Ex. H. Professor Metze freely admitted to Dean Nowlin, Professor McDonald, and Professor Spain during an interview that Fisher celebrated a murder in his clinical office and that he made no effort to correct her behavior. *Id.* Dean Nowlin also relied on witness statements from Professor Morgeson and Professor Chapman, who had interviewed Professor Morgeson and her students, which confirmed the clinic work and studies were adversely affected by Fisher's celebration. *Id.* Dean Nowlin's Office is confident in its fact-finding that Fisher celebrated an assassination in the Law School Clinical Suite in disruptive fashion. *Id.*; App. 1 at Appx. 4–6, Chapman Decl., ¶ 4, Ex. A.

### STANDARD OF REVIEW

Injunctive relief "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025) (internal quotations omitted). To obtain either an emergency temporary restraining order or a preliminary injunction, the movant must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Id.* (internal quotations omitted). "The government's and the public's interests merge when the government is a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or a preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (noting that the court should not grant preliminary injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements" (internal citations omitted)). However, even if a movant satisfies each requirement, the decision to grant an injunction remains within the discretion of the trial court, which should issue them only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### ARGUMENT AND AUTHORITIES

I. **An emergency temporary restraining order is not warranted because the reprimand has already been reported to TBLE.**

This Court should deny Plaintiff's Emergency Motion for Temporary Restraining Order (TRO) because the alleged harm Plaintiff seeks to prevent—a reprimand—has already been finalized and reported to the TBLE. Plaintiff seeks a TRO enjoining the Law School and Defendants "from entering a reprimand and annulling all disciplinary action against Plaintiff Ellie Fisher . . . ." ECF 4 at 24. First, Plaintiff did not sue either the Law School or the TBLE, so any injunctive relief would not apply to the school itself nor the TBLE. Second, on Monday, April 13,

2026, Dean Nowlin issued a letter of reprimand to Fisher for her violation of the Honor Code. App. 6 at Appx. 43–46, Nowlin Decl., Ex. G. Dean Nowlin electronically filed the Dean's Character and Fitness Certification which included the reprimand and other supporting documents with the TBLE at 4:25 PM that same day. *Id*. at Ex. H, Ex. I. This is the status quo, and a TRO would not remedy the alleged harm because Dean Nowlin has already finalized the reprimand and filed his recommendation against Fisher's admission to the Texas Bar with the TBLE.

**II. This Court lacks jurisdiction over Plaintiff's claim against most Defendants in this case.**

Defendants incorporate by reference all arguments made in Defendants' Motion to Dismiss and briefly summarize them here.

First, Plaintiff has failed to show standing against some Defendants sued in their official capacity because they cannot grant Plaintiff's requested relief. To establish standing, a plaintiff must, among other things, "seek a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021). The only potential proper defendant for Plaintiff's First Amendment retaliation claim is thus a defendant who can withdraw Dean Nowlin's formal reprimand and Dean Nowlin's report of the formal reprimand in his Character and Fitness Certification. The Associate Dean for Academic Affairs (Dean Gonzalez), the members of the Texas Tech School of Law Honor Council (Professor Spain, Professor Hardberger, Professor Outenreath, and 2L-student Ally Owens), and Professor Terri Morgeson are no longer involved in the disciplinary process with Plaintiff, are not engaging in "continuing harm" against Plaintiff, and cannot grant Plaintiff her requested relief. Plaintiff has not shown that these Defendants will certainly violate Plaintiff's First Amendment rights in the future, nor can they withdraw Dean Nowlin's letter of reprimand or Dean Nowlin's Character and Fitness Certification. This Court therefore lacks jurisdiction to grant injunctive relief for Plaintiff against these Defendants in their official capacities.

Second, sovereign immunity applies, and Plaintiff cannot obtain equitable relief against the members of the Board of Regents in their official capacity. For the narrow *Ex parte Young* exception to apply, a state official must have some enforcement connection to the law being challenged. *Mi*

*Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). The Fifth Circuit looks to three guideposts for this analysis: whether: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented," *i.e.*, a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law.'" *Id.* (quoting *Tex. All. For Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).

The individual members of the Board of Regents are improper defendants. *See* ECF 23 (discussing statutory duties of Board of Regents). They do not have a "particular duty to enforce" the Texas Tech University School of Law's Honor Code. Although the Board of Regents has general authority over the Texas Tech University System, a "'general duty to enforce the law is insufficient.'" *Mi Familia Vota*, 105 F.4th at 326 (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020)). Neither have the individual members of the Board of Regents "demonstrated willingness to exercise" their nonexistent, particularized duty to enforce the Texas Tech University School of Law's Honor Code. Nor has Plaintiff shown that each member of the Board of Regents, through their own personal conduct, "compel[s] or constrain[s persons]" to engage in alleged First Amendment retaliation. Therefore, the Board of Regents retain their sovereign immunity and are the wrong defendants under *Ex parte Young*. However, even if this Court disagrees with this determination, *see Heilrayne v. Univ. of Texas at Austin*, No. 1:25-cv-640, 2026 WL 630966, at *6–7 (W.D. Tex. 2026) (citing *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023)), this Court should still dismiss the individual members of the Board of Regents under Federal Rule of Civil Procedure 12(b)(6), *see id.* at *10 (dismissing, for failure to state a claim, members of a university system's board of regents who were not personally involved in the allegedly unlawful actions, even though plaintiff alleged the individual board members had the authority to expunge their disciplinary records).

Third, qualified immunity bars monetary relief against the Defendants sued in their individual capacity. Qualified immunity bars Plaintiff's individual capacity claims against the

members of the Texas Tech School of Law Honor Council (Professor Spain, Professor Hardberger, Professor Outenreath, and 2L-student Owens), Professor Morgeson, the Associate Dean for Academic Affairs (Dean Gonzalez), and the Dean of the School of Law (Dean Nowlin). The doctrine of qualified immunity prevents courts from awarding damages against a government official in his personal capacity unless: (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Pearson v. Callahan*, 555 U.S. 223, 243 (2009) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In the Fifth Circuit, the qualified immunity defense involves a shifting burden of proof. The defendant must first satisfy his burden by showing "the challenged conduct was within the scope of his discretionary authority," which is satisfied "when he performs non-ministerial acts within the boundaries of his official capacity." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (internal quotations omitted). Then, it becomes the "plaintiff's burden" to show that "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,'" where the identified "right may not be defined at a 'high level of generality.'" *Santander v. Salazar*, 133 F.4th 471, 478, 480 (5th Cir. 2025) (first quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), then quoting *al-Kidd*, 563 U.S. at 742)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Honor Council members, Professor Morgeson, Dean Gonzalez, and Dean Nowlin are all entitled to qualified immunity because they exercised their duties diligently. Plaintiff has not met her burden and cannot overcome qualified immunity. Therefore, all claims for monetary relief against Defendants in their individual capacity fail. This leaves only Plaintiff's claim against Dean Nowlin in his official capacity—a claim for which Plaintiff cannot establish her entitlement to any preliminary relief.

### III. Plaintiff Is Unlikely to Succeed on The Merits of Her First Amendment Retaliation Claim.

Plaintiff has failed to show likelihood of success on the merits of her First Amendment retaliation claim.[3] In a retaliation case, the legal test courts apply depends on the plaintiff's relationship to the defendants. If the relationship can properly be characterized as a public employer-public employee relationship, then *Pickering* balancing applies. *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004). Otherwise, the "ordinary citizen" test applies. *Id.*

Context matters. This is not a case where a student was targeted for expressing an unpopular viewpoint. Rather, this is a case where a third-year law student with her supervised practice card who was the functional equivalent of an employee of Texas Tech Law School's Criminal Defense Clinic where she represented real clients in court, was properly disciplined under the school's Honor Code for behaving in an unprofessional manner in the clinic where clients could have been present. The incidents occurred in a nonpublic forum, and the disciplinary action was not based on viewpoint discrimination.

Here, Plaintiff has failed to show any adverse action by Defendants that was motivated by her speech. If the Court applies the ordinary citizen framework, Plaintiff has additionally failed to show she was engaging in constitutionally protected activity. Because the Clinical Suite is a nonpublic forum, and Defendants' actions were reasonable and did not constitute viewpoint discrimination, Plaintiff's claim fails. This Court should deny Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

---

[3] Plaintiff has plead only a claim for First Amendment retaliation. *See* ECF 3 at 31–33. The Fifth Circuit does not recognize any freestanding chilled speech claims or claims of unlawful suppression of speech in the university context, so to the extent Plaintiff argues Defendants' actions chilled her speech, that argument "rises and falls with [her] retaliation claim." *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025).

A. **Plaintiff's claim fails under either test.**

1. ***Pickering* applies because Plaintiff's work in the clinic makes her the functional equivalent of an employee.**

At issue here is the regulated conduct of a professional trainee rather than the protected speech of a citizen. Plaintiff's position working for the Criminal Defense Clinic renders her the functional equivalent of an employee for *Pickering* purposes. A public employee plaintiff must plead four elements to assert a retaliation claim cognizable under the First Amendment: (1) the plaintiff has suffered an adverse employment action; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff's interest in free speech on matters of public concern outweighs the defendant's interests in efficiently managing a public function; and (4) the defendant's action was motivated by the plaintiff's speech. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). Here, Defendants agree that the assassination of Charlie Kirk is a matter of public concern, but Plaintiff has failed to show any adverse action that was motivated by her speech.

*Pickering* balancing exists because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Therefore, courts must strike a balance "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

Professional degree programs often permit students to gain practical experience by performing professional tasks under supervision. Although the Fifth Circuit has not directly addressed this issue, other circuits have viewed students as public employees when those students participate in practicum programs, internships, or student teaching positions for course credit. *See Andersen v. McCotter,* 100 F.3d 723, 726 (10th Cir. 1996) (holding that a student intern, working for college credit in a penitentiary, was properly treated as a public employee rather than as a student in a First Amendment suit against the Department of Corrections.); *Hennessy v. City of Melrose*, 194 F.3d 237, 244–45 (1st Cir. 1999) (holding that a student teacher was a public employee because the

11

"apprentice-type relationship more closely resembles an employer-employee relationship than a school-pupil relationship."); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (practicum student at psychiatric hospital); *Snyder v. Millersville Univ.*, No. CIV.A. 07-1660, 2008 WL 5093140, at \*14–15 (E.D. Pa. Dec. 3, 2008) (student teacher).

The Texas Tech Law School Clinical Program offers students real-world experience through opportunities to provide free legal representation and counseling to real clients. *See* Clinical Programs homepage.[4] Although they are supervised by Professor McDonald, students working in the Criminal Defense Clinic "are fully responsible for their cases, from intake to disposition." *See* Criminal Defense Clinic website.[5] As was the case in *Hennessy*, the relationship between students working in the clinic and the professors who supervise is an apprentice-type relationship that more closely resembles an employer-employee relationship than a student-professor relationship. *Hennessy*, 194 F.3d at 244–45. Therefore, *Pickering* balancing applies.

### 2. Under *Pickering*, Plaintiff has failed to show a causal connection and that her interests prevail.

*Pickering* requires "'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (quoting *Pickering*, 391 U.S. at 568 and citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). Courts should not scrutinize the speech at issue in a vacuum; courts should consider the "manner, time, and place of the employee's expression, as well as the context in which the dispute arose." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 799 (5th Cir. 1989) (citing *Rankin*, 483 U.S. at 388 and collecting cases). Among a court's considerations should be "whether the speech was likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the

---

[4]Available at: https://www.depts.ttu.edu/law/clinics-and-externships/clinics/.

[5]Available at: https://www.depts.ttu.edu/law/clinics-and-externships/clinics/crim/index.php.

department's proper functioning." *Harris*, 168 F.3d at 223 (citing *Brawner v. Richardson,* 855 F.2d 187, 192 (5th Cir. 1988)).

Public employers occupy a "dual role . . . as a provider of public services and as a government entity operating under the constraints of the First Amendment." *Rankin*, 483 U.S. at 384. Even though public employers cannot act in certain ways that would violate the First Amendment, they are still employers that are responsible for the efficient performance of a certain public function. *Id.* Thus, second-guessing every decision related to enforcement of professionalism standards would burden that performance. *Id.*

One factor is whether the employee's speech caused a disruption. The Fifth Circuit recognizes reasonable predictions of disruption as sufficient. *Nixon v. City of Houston*, 511 F.3d 494, 499 n.4 (5th Cir. 2007). "[A] government employer need not produce evidence of actual harm or disruption to governmental operations." *Id.* (quoting *Connick*, 461 U.S. at 152 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office . . . is manifest before taking action.")). Courts have therefore given "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994).

Although Plaintiff has likely suffered an adverse action, she has not shown that the Defendants' action was motivated by her speech. First, as discussed in Defendants' Motion to Dismiss, most of the seventeen Defendants in this case have no real tie to the alleged harm. But even if they did, Plaintiff was disciplined because of her unprofessional conduct in violation of the Honor Code, not her speech. Professor Keffer, the Honor Council, Associate Dean Gonzalez, nor

Dean Nowlin considered the viewpoint Fisher expressed.[6] The Honor Council found there was clear and convincing evidence "that Ellie Fisher was loud, happy, and celebratory and made certain statements to the effect that she was in a good mood because Charlie Kirk had been shot." App. 9 at Appx. 284–86, Spain Decl., Ex. A. Furthermore, the Honor Council found that "[s]uch statements endorsing or celebrating death or violence, particularly in a professional office setting, are contrary to respect for the rule of law and violate ordinary standards of professional conduct." *Id.* And Dean Nowlin based his reprimand both on the Honor Council's findings and on his own independent investigation, and is confident in the fact-finding that Ms. Fisher celebrated an assassination in the clinical suite in a disruptive fashion on September 10, 2025." App. 6 at Appx. 43–46, Nowlin Decl., Ex. H. Dean Nowlin also based his reprimand and recommendation against Ms. Fisher's admission to the Bar on her refusal to take responsibility for her misconduct and her repeated acts of dishonesty throughout the disciplinary process. *Id.*

Plaintiff has also failed to show her interests prevail under *Pickering*. Defendants, in their official capacity as officers of Texas Tech School of Law, have an interest in promoting the efficiency of public services for *Pickering* purposes. This interest is especially implicated when the unprofessional conduct at issue involves openly celebrating a public figure's assassination. A public employee who shows support for political violence necessarily violates basic professionalism standards.

Furthermore, Plaintiff's unprofessional conduct created a substantial disruption to the law clinic operations. Unlike the empty gun holsters in *Smith v. Tarrant Cnty.*, 694 F.Supp.2d 610, 631

---

[6] Keffer's investigation did not consider any viewpoint expressed by Fisher but rather focused solely on whether Fisher's behavior in the Law School Clinical Suite on September 10, 2025, was unprofessional conduct in violation of section 2.H. of the Honor Code. App. 3 at Appx. 19-20, Keffer, ¶ 6. The Honor Council did not consider the viewpoint of Fisher's comments in its decision. App. 9 at Appx. 284-86, Spain, ¶ 9. Dean Gonzalez also did not find that the Honor Council considered the viewpoint expressed by Fisher. App. 2 at Appx. 10-11, Gonzalez, ¶ 5, Ex. B. Dean Nowlin's recommendation was based on three related reasons, none of which considered the viewpoint expressed by Fisher. App. 6 at Appx. 43-46, Nowlin, ¶ 16, Exs. H and I.

(N.D. Tex. 2010), Plaintiff's outburst was not the nondisruptive symbolic speech that is protected even in a nonpublic forum. Plaintiff was almost yelling, exuberantly proclaiming the news of a political assassination and reporting how happy she was about it. App. 5 at Appx. 34–36, Morgeson Decl., ¶ 6. Likewise, Defendants' disciplinary actions were not based on hypothetical injuries to campus culture and to student feelings but on credible evidence of actual disruption. As the Honor Council noted, "[a]s a result of Ellie Fisher's actions, several students as well as a faculty member expressed concerns about the appropriateness of Ms. Fisher's response to the shooting which interfered with their normal work routine." App. 9 at Appx. 284–86, Spain Decl., Ex. A at 291. Apart from the actual disruption that occurred, for a public workplace, Defendants' reasonable predictions of substantial disruption would have been sufficient. When Plaintiff abruptly and forcefully threw open the Clinical Suite front doors,[7] she could not have known whether any clients were present or whether students or faculty members were in virtual client meetings or other important meetings. It was thus entirely reasonable to assume that Plaintiff's complete disregard for the professionalism of the Clinical Suite would cause disruption. Plaintiff has not shown her interests prevail under *Pickering*.

### 3. Under ordinary citizen, Plaintiff fails to show any adverse action by Defendants that was substantially motivated by her constitutionally protected activity.

On the other hand, even if this Court does not view Plaintiff as a public employee, her claim still fails under the ordinary citizen test. In a nonemployment context, a plaintiff must plead three elements to assert a retaliation claim cognizable under the First Amendment: "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were *substantially* motivated against the plaintiff['s] exercise of

---

[7] It's also important to note that Plaintiff did not merely "express[] her viewpoints in private conversations in her professor's offices or with her peers in the Clinic Office." ECF 4 at 19. The Honor Council's decision was based solely on the clinic entrance incident, and Dean Nowlin's reprimand was based on three incidents—clinic entrance, Professor Metze's office, and clinic office. App. 6 at Appx. 43-46, Nowlin Decl., Ex. G. These incidents were extremely disruptive. *Id.*

constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). Here, unprofessional conduct inside a law school clinic where clients could have been present does not constitute constitutionally protected activity. Furthermore, Plaintiff has not shown that any constitutionally protected activity *substantially* motivated Defendants' allegedly adverse actions. The ordinary citizen test adds the modifier, "substantially" and thus heightens the causation standard. Plaintiff bears the burden of showing Defendants' adverse actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct, and she cannot do so for the reasons discussed *supra*.

### a)  Plaintiff fails to show she was engaging in constitutionally protected activity.

The Clinical Suite is a nonpublic forum. Restrictions on speech therefore need only be reasonable and devoid of viewpoint discrimination.

The First Amendment does not require government actors to permit all forms of speech on government-owned property. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992)). The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

As Plaintiff correctly highlights, the Fifth Circuit has articulated the forum category structure differently in different cases, but the simplest formulation organizes the categories based on the level of scrutiny applied to speech restrictions in each type of forum. *See Freedom From Religion Found.*, 955 F.3d at 426. Under this formulation, the types of forums can be grouped into two broad categories: (1) traditional and designated public forums and (2) limited public forums and nonpublic forums. *Id.* (collecting cases). Traditional public forums are places that "'by long tradition or by government fiat have been devoted to assembly or debate.'" *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001) (quoting *Estiverne v. La. State Bar Ass'n,* 863 F.2d 371, 376 (5th Cir. 1989)). Designated public forums "may be created by government designation of a place

or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Chiu*, 260 F.3d at 345 (quoting *Cornelius*, 473 U.S. at 802). Speech restrictions in traditional public and designated public forums must serve a compelling state interest and must be narrowly tailored. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

A limited public forum is a forum opened for public expression "for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995) (internal quotation marks omitted)). Finally, a nonpublic forum "is not by tradition or designation open for public communication . . . ." *Chiu*, 260 F.3d at 247 (citing *Estiverne*, 863 F.2d at 376). "As with limited public forums, '[t]he government can restrict access to a nonpublic forum 'as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* (quoting *Arkansas Educ. TV Comm'n. v. Forbes*, 523 U.S. 666, 677–78 (1998)).

Courts focus on two factors to separate designated public forums from limited public forums: "(1) the government's intent with respect to the forum, and (2) 'the nature of the [forum] and its compatibility with the speech at issue.'" *Chiu*, 260 F.3d at 346 (quoting *Estiverne*, 863 F.2d at 378). Creating a designated public forum is an intentional, deliberate act. *Id.* at 347 (citing *Cornelius*, 473 U.S. at 3449. And it does not happen automatically when the government permits limited discourse or selective access. *Id.* (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)

Public universities consist of different types of forums. Although a university campus, "at least for its students, possesses many of the characteristics of a public forum, . . . [a] university's mission is education, and decisions of [the Supreme Court] have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981). "The Supreme Court's forum analysis jurisprudence does not require [courts] to choose between the polar extremes of treating

17

an entire university campus as a forum designated for *all* types of speech by *all* speakers, or, alternatively, as a limited forum where any reasonable restriction on speech must be upheld." *Just. For All v. Faulkner*, 410 F.3d 760, 766–67 (5th Cir. 2005).

Indeed, "the entire University campus is not a public forum subject to strict scrutiny." *Roberts v. Haragan*, 346 F. Supp. 2d 853, 860 (N.D. Tex. 2004). While campus park areas, sidewalks, streets, or other similar common areas "comprise the irreducible public forums on the campus," the remaining areas—dorms, classrooms, faculty offices, auditoriums, dining halls, etc.—can be designated public forums, limited public forums, or nonpublic forums depending on how the university treats them. *Id.* "As for classrooms and adjacent hallways, generally speaking, these areas are considered nonpublic forums." *Smith v. Tarrant Cnty. Coll. Dist.*, 694 F. Supp. 2d 610, 626 (N.D. Tex. 2010) (citing *Bowman v. White*, 444 F.3d 967, 977 (8th Cir. 2006) ("Classrooms are not public forums . . . ."); *Axson–Flynn v. Johnson*, 356 F.3d 1277, 1285 (10th Cir. 2004) (concluding, under *Hazelwood School District* and *Perry Education Association* that a university classroom is a non-public forum); *Bishop v. Aronov*, 926 F.2d 1066, 1071 (11th Cir. 1991) (stating that although a university *may* open its classrooms for other purposes, they are generally dedicated to the university's teaching purposes); *also cf. M.A.L. v. Kinsland*, 543 F.3d 841, 847 (6th Cir. 2008) (concluding public school hallways are a nonpublic forum)).

Here, Plaintiff argues the relevant campus spaces—the entrance to and hallways of the Law School Clinical Suite, Professor Metze's office within the Clinical Suite, and the Criminal Defense Clinic workspace within the Clinical Suite—are designated public forums, which would require that any speech regulation face strict scrutiny. On the contrary, because the Clinical Suite is a professional workplace and is not open for any public expression but has been reserved for certain groups—students, clients, and professors—and for the discussion of certain topics—matters pertaining to the students' education and clinical cases—these spaces are most accurately classified as nonpublic forums. The Clinical Suite is neither by tradition nor designation open for public communication. Students use the Clinical Suite to complete case assignments, meet with

18

supervising professors, and meet with clients. Plaintiff has not shown that the Clinical Suite is open for public expression in any way.

Even if this Court does not conclude the Clinical Suite is a nonpublic forum, applying the *Chiu* test, the Clinical Suite is not a designated public forum. First, Texas Tech Law School's intent for the Clinical Suite is to function as law offices and provide an opportunity for law students to represent real clients and participate in real cases before graduating. *See* Clinical Program promotional video, Professor McDonald at 3:10–17 ("Basically, we tell our students, you get to practice law here for a year before you graduate, so you're a year ahead of everybody else.").[8] Plaintiff argues the Clinical Suite is for "student participation, learning, and what Patrick Metze described as a 'safe space' for free expression." The Clinical spaces are indeed open for student participation and learning, but standards of professionalism and decorum are necessary to achieve these goals. When a student loudly celebrates a murder in these spaces, student participation and learning are inhibited. And according to Professor Metze, in an interview with Dean Nowlin, Plaintiff did celebrate a murder in the Clinical Suite and Professor Metze admitted his failure to take any steps to correct Plaintiff's behavior. *See* App. 6 at Appx. 43–46, Nowlin Decl., Ex. I at 94. Metze later retired from the law faculty in the face of further disciplinary proceedings because of his failure to do so. *Id.* Second, Plaintiff has not shown that classifying the Clinical Suite as a limited public forum is inconsistent with the way the Clinical Suite has been used in the past. Plaintiff has provided no examples of students disruptively celebrating a murder and facing no discipline. The Clinical Suite is not a designated public forum.

### b) Defendants did not engage in viewpoint discrimination, and the Honor Council's decision and Dean's reprimand were reasonable in light of the Clinical Suite's purpose.

Viewpoint discrimination happens when "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Rosenberger*, 515 U.S. at 829 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). The Supreme Court has

---

[8] Available at: https://www.depts.ttu.edu/law/clinics-and-externships/clinics/index.php.

distinguished between content discrimination, which may be permissible when reasonable, and viewpoint discrimination, which is never permissible. *Id.* So, the government may select the topics for discussion in a limited or nonpublic forum, but it may not allow some viewpoints on a topic and punish others. *See id.*

Plaintiff's reliance on *Tinker* and the school-speech cases is misguided because this is not a case of viewpoint discrimination. The K–12 school-speech line of cases is instructive for general principles, but those cases do not control this case. True, neither the Fifth Circuit nor the Supreme Court has ever squarely held that *Tinker* does not apply at the university level, *See Students for Just. in Palestine v. Abbott*, 756 F. Supp. 3d 410, 425 (W.D. Tex. 2024), but three reasons counsel against applying it to this case.

First, university students are treated as adult citizens for First Amendment analysis purposes, and the ordinary citizen test is the applicable test for retaliation claims. *See Keenan*, 290 F.3d at 258 (applying ordinary citizen test to non-employee retaliation claim). Second, the incidents here occurred not merely in a traditional public forum on a university campus, nor even in the nonpublic forum of a university classroom. App. 9 at Appx. 284–86, Spain Decl., Ex. A at 291. The incidents here occurred in a professional working environment where students work on real cases for real clients. *Id.* The government has more leeway in restricting speech in a public workplace under either the *Pickering* test or the ordinary citizen test. *See Pickering*, 391 U.S. at 568; *cf. Keenan*, 290 F.3d at 258. Third, no viewpoint discrimination occurred here. At most, this was content discrimination—prohibiting celebrations of murder—which is entirely permissible in a limited public or nonpublic forum. *Rosenberger*, 515 U.S. 819 at 829. Therefore, *Tinker*'s substantial and material disruption standard does not constrain this case, and any alleged absence of an actual disruption would not prove Plaintiff's retaliation claim.

This is not viewpoint discrimination. Plaintiff was disciplined pursuant to the Honor Code because she disruptively celebrated a political assassination in the Clinical Suite where clients could have been present. Plaintiff was not disciplined for her "subjective feelings" or for any "'impure' thoughts about Charlie Kirk's death," nor was she disciplined for her viewpoint. ECF 4 at 18.

Rather, Plaintiff was disciplined for the disruptive and unprofessional way she expressed her viewpoint. As Plaintiff points out, at least one other student expressed a similar viewpoint to Plaintiff's, but this student was not disciplined because his comments were neither disruptive nor unprofessional like Plaintiff's were. *See id.* at 19 ("one student interject[ed] in Professor Kenneth Williams'[s] class that Charlie Kirk and [sic] been shot and was a "right-wing" activist."). Fisher was disciplined because her conduct was disruptive and unprofessional, not because her viewpoint was disfavored.

Celebrating the brutal and public murder of a fellow human being offends any formulation of professionalism standards. Certainly, such conduct would be considered unprofessional and inappropriate in professional law firms, especially when clients may be present. The Clinical Suite functions like a professional law firm. There, client meetings are held, students working in the clinics receive mentorship and supervision from professors, and work is done in the clinical workspaces. Several of the clinics, particularly the Family Law Clinic and the Criminal Defense Clinic, serve low-income individuals facing some of the most difficult circumstances in their lives. Just like a law firm, these factors demand professionalism. Furthermore, law schools are charged with training young lawyers and Law School Deans in Texas generally submit a Dean's Certification to the TBLE, verifying graduation, academic standing, and character and fitness qualifications, and ultimately recommending for or against a student-applicant's admission to the Bar. *See e.g.*, App. 6 at Appx. 43–46, Nowlin Decl., Ex. I at 92–96. A professional environment necessitates professional standards, which often include restrictions on speech. Defendants' actions were therefore reasonable in light of the purpose of the Clinical Suite.

c) **Even if strict scrutiny applies, Defendants have a compelling interest in maintaining professionalism in areas where clients could be present and the Honor Council's decision was narrowly tailored to serve that interest.**

Even if this Court concludes that the Clinical Suite is a designated public forum and applies strict scrutiny, Plaintiff has failed to show the Honor Council's decision and Dean's reprimand are not narrowly tailored to achieve a compelling interest. Public universities have a compelling interest

21

in providing an effective learning environment, which requires the authority to enforce student codes of conduct. *See Tex. A&M Queer Empowerment Council v. Mahomes*, 772 F. Supp. 3d 792, 808 (S.D. Tex. 2025). "Maintaining student safety on campus and order generally are substantial interests as well." *Smith*, 694 F. Supp. 2d at 627 (citing *Bd. of Trs. v. Fox*, 492 U.S. 469, 475 (1989) (stating that student safety was a substantial interest justifying a university's restriction on commercial speech) and *Healy v. James*, 408 U.S. 169, 180 (1972) (noting the "acknowledged need for order" on campus)).

The challenged disciplinary actions are also narrowly tailored to that compelling interest. Plaintiff frames this case as an effort to punish "one uppity black woman" for expressing thoughts that might hurt the feelings of "supposedly fragile conservatives." ECF 4 at 24. But Plaintiff has not brought a claim for racial discrimination and has not established she was targeted for her viewpoint. Instead, this case is about maintaining a professional environment conducive to effective learning and professional public service within the Clinical Suite. App. 6 at Appx. 43–46, Nowlin Decl. at 43–46, ¶¶ 7, 16. Disciplining Plaintiff for her disruptive, unprofessional behavior in the Clinical Suite is narrowly tailored to the compelling interest here. Thus, Defendants' actions would pass even strict scrutiny.

## IV. The Remaining Preliminary Injunction Factors Weigh Against Preliminary Relief.

The Plaintiff has also not "clearly carried the burden of persuasion" on the remaining preliminary injunction factors. First, Plaintiff has failed to show a "substantial threat of irreparable injury if the injunction is not issued" because Plaintiff has failed to clearly show that Defendants have violated her First Amendment rights. Nor has the Plaintiff shown causal connection sufficient to support her First Amendment retaliation claim. Second, Plaintiff has not shown that "the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted." Plaintiff argues that allowing Dean Nowlin's reprimand to stand would force her to report the reprimand to the Texas Bar or to any bar to which she may wish to apply in the future. ECF 4 at 28. But even without the reprimand, TBLE will investigate Plaintiff's character and fitness and will likely discover this incident anyway. Furthermore, Dean Nowlin's recommendation against

22

Plaintiff's admission to the Texas Bar accomplishes the same result Plaintiff seeks to prevent with this injunction. *See* App. 6 at Appx. 43–46, Nowlin Decl., Ex. I. Thus, no substantial threat of irreparable harm exists if this injunction is not issued.

On the other hand, the public and Defendants will all be irreparably harmed if an injunction is granted. *See Mock v. Garland*, 75 F.4th at 577 ("The government's and the public's interests merge when the government is a party."). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). And if a statute by the "Texas Legislature assigned . . . prerogatives" to a government agency, an injunction that prohibits the agency from exercising its prerogatives "prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury." *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020). In the present case, Defendants, acting on behalf of Texas Tech Law School, are trying to fulfil the lawful duties delegated to them by the Board of Regents to provide an effective learning environment to train young lawyers. An injunction that annuls this reprimand would create precedent that would burden Texas Tech Law School's future efforts to enforce its Student Code of Conduct, which would irreparably harm the public and the state.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

Date: April 27, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

Respectfully submitted.

/s/ Wade Johnson
WADE JOHNSON
Special Counsel
Texas State Bar No. 24062197
wade.johnson@oag.texas.gov

BRIAN B. TUNG
Assistant Attorney General
Texas State Bar No. 24145179
Brian.Tung@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No. 24149365
Lauren.Saeger@oag.texas.gov

COUNSEL FOR THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 27, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

MICHAEL THAD ALLEN
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06320
Telephone (860) 772-4738
mallen@allenharrislaw.com

MARK T. MANSFIELD
MANSFIELD & MANSFIELD
P.C. 1550 Norwood Dr. Suite 107
Hurst, Texas 76054
Telephone: (817) 282-3450
mark@mansfieldpc.com

COUNSEL FOR ELLIE FISHER

/s/ Wade Johnson
WADE JOHNSON
Special Counsel

24