UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ELLEN MAE FISHER,<br><br>                    Plaintiff<br><br>          vs.<br><br>TEXAS TECH UNIVERSITY<br>REGENTS et al.,<br><br>                    Defendants. | Civil Case No. 5:26-CV-00073-X |

**PLAINTIFF ELLEN MAE FISHER'S REPLY IN SUPPORT OF HER MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

Plaintiff Ellen Mae Fisher's Reply in Support of Her Motion for Temporary Restraining Order and Preliminary Injunction ....................................................................................... i

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

    I.     Texas Tech Intensifies its Retaliation to Ruin Fisher ....................................... 1

    II.    Injunction is warranted to Return to Last Uncontested Status Quo ................................ 3

    III.   The Fifth Circuit Has Settled whether Regents Are Proper Defendants ......................... 4

    IV.   Defendants Suppress Student Speech—Not Employee Speech ..................................... 6

    V.    Fisher Prevails Even if *Pickering* Applies, which It Does Not....................................... 9

    VI.   Conclusion ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015)...................................................8

*Andersen v. McCotter*, 100 F.3d 723 (10th Cir. 1996) ................................................................. 6, 7, 8

*Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379 (5th Cir. 2015)...........................................................7

*Bevill v. City of Quitman*, Civil Action No. 4:19-cv-406, 2025 U.S. Dist. LEXIS 154138 (E.D. Tex. Aug. 11, 2025)...............................................................................................................10

*Bevill v. Wheeler*, 103 F.4th 363 (5th Cir. 2024) .................................................................7

*Brawner v. Richardson*, 855 F.2d 187 (5th Cir. 1988)...........................................................10

*Buchanan v. Alexander*, 919 F.3d 847 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 432 (2019) ............................6

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ..............................................................5

*Diei v. Boyd*, 116 F.4th 637 (6th Cir. 2024)....................................................................8

*Doe v. Tex. Christian Univ. et al.*, 601 F. Supp. 3d 78 (N.D. Tex. 2022) ........................................3

*Domain Prot., LLC v. Sea Wasp, LLC*, Civil Action No. 4:18-cv-792, 2019 U.S. Dist. LEXIS 118781 (E.D. Tex. July 17, 2019)...................................................................................3

*Escobarrivere v. Whitaker*, 2022 U.S. App. LEXIS 33223 (5th Cir. 2022).........................................5

*Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).............................................4

*Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)............................................6

*Haverkamp v. Linthicum*, 6 F.4th 662 (5th Cir. 2021) ....................................................4

*Healthy Vision Ass'n*, 138 F.4th  385 (5th Cir. 2025)...................................................5

*Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023).................................................................4

*Janus v. AFSCME, Council 31*, 585 U.S. 878, 138 S. Ct. 2448, 201 L. Ed. 2d 924 (2018) ........................2

*Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262 (5th Cir. 1990)..............................................4

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004)....................................................................7

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)...........................................9

*Nixon v. City of Hous.*, 511 F.3d 494 (5th Cir. 2007) ......................................................7

*Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 93 S. Ct. 1197, 35 L. Ed. 2d 618 (1973) ...............6

*Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).........................6, 7, 9, 10

*Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987) ..........................................2

*Shamloo v. Mississippi State Board of Trustees*, 620 F.2d 516 (5th Cir. 1980) ....................................7

*Snyder v. Millersville Univ.*, No. 07-1660, 2008 LX 50460 (E.D. Pa. Dec. 3, 2008).....................................7

*Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969).......................................................... 6, 9

*Watts v. Florida International University*, 495 F.3d 1289 (11th Cir. 2007) .......................................7

*Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000) ...........................................................................5

*Yeargin Const. Co. v. Parsons & Whittemore Ala. Mach. & Servs. Corp.*, 609 F.2d 829
(5th Cir. 1980) ...............................................................................................................3

**Statutes**

Tex. Ed. Code § 51.9315(b)..........................................................................................................5

Tex. Ed. Code § 51.354(b)(5) .......................................................................................................5

**Rules**

N.D.Tex. L.R. 7.1(e) ...................................................................................................................5

## I.    TEXAS TECH INTENSIFIES ITS RETALIATION TO RUIN FISHER

Defendant's Record Appendix reveals new evidence of fresh and escalating retaliation. No sooner did Defendant Dean Nowlin learn that Fisher sued him (ECF No. 3-5, filed April 12, 2026), than he rushed to reprimand her 24 hours later (April 13, 2026). See e.g. Def's Appx at 85-93. Defendants reported this to the Texas Board of Law Examiners (TBLE) to ruin her career. *Id.*[1] To the TBLE, Dean Nowlin embellished facts never found by the Honor Council. *Id.* at 89 (e.g. supposed dishonesty). He invokes some sort of Dean's Star Chamber process which Fisher was never permitted to defend against and chides the Honor Council, which at least subjected witnesses to cross-examination, for getting things wrong. *Id.*

A Morgeson Affidavit offers up new misrepresentations, contradicted by direct witnesses and even by herself. *Id.* at 35 (testifying to "near yell" (*cf.* Fisher Appendix, ECF No. 4-1 (FA) at 42 (28:52-29:27), testifying to no such thing); Def's Appx at 35, Fisher "rais[ed] hands over head" (*cf.* FA at 43 (30:48-31:30), testifying to no such thing and retracting "mother fucker" statement); Def's Appx at 36 (mysteriously blind to white students "participating" in conversation about shooting (*cf.* FA at 43 (33:34), testifying to no such thing and describing: "lots of discussion" and "they were very happy [Kirk] had been shot"); Def's Appx at 35 (Professor Stephens "taken aback" (*cf.* FA at 37 (21:20-27), contradicted by Stephens).

Even if true, Nowlin's preferred "facts" indicate retaliation against Fisher for her viewpoints. Nowlin identifies Fisher's "refus[al] to take responsibility or show any remorse for her unprofessional actions." *Id.* at 88. To be clear, by "actions" Nowlin means "speech," not least Fisher's refusal to cow-tow to the demand that she apologize for impermissible views. This is

---

[1] Defendants correctly note that Defendants' further retaliation renders a part of Fisher's previously requested relief obsolete. Fisher prays the Court to enjoin Defendants from entering a reprimand, which Defendants have now issued. ECF No. 4 at 24. Yet Fisher should be allowed to pray this Court to enjoin and annul all disciplinary action against her and also to retract Dean Nowlin's retaliatory reprimand from the TBLE.

compelled speech. *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892, 138 S. Ct. 2448, 2463, 201 L. Ed. 2d 924 (2018) ("Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command [that no public official may prescribe orthodoxy]"). But like the Keffer Report, Nowlin suppresses all exculpatory evidence and ignores Defendant Morgeson's ever-evolving misrepresentation. *Id.* at 90. Nowlin even alludes to some conspiratorial "cover up." *Id.* He attests "100% confidence in [his] fact-finding that Ms. Fisher celebrated an assassination." *Id.* at 89. In other words, the Dean retaliates for the same viewpoints found protected in *Rankin v. McPherson*, 483 U.S. 378, 381, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987) (affirming Fifth Circuit holding that deputy constable could not be fired for uttering, "I hope they get [President Reagan]" after Hinckley assassination attempt).

In what the conservative champion of campus free speech, Ben Shapiro, calls "virtue signaling,"[2] Nowlin mounts a pious condemnation of "dishonesty." Yet his faux outrage over vulgarity and mockery of the dead is itself dishonest. Clinic students Tristen Perez attests that vulgarity flows from the mouths of clinical faculty—Morgeson included—guest speakers, and students alike, including "F bombs." Supp. Fisher Appendix (SFA) at 297, 2d Affidavit of Tristan Perez, ¶¶ 6-7, 18. Professor Dwight McDonald openly mocks the dead in the clinic, to general amusement. *Id.* at 297-288, ¶¶ 11-15. At least until the black student Ellie Fisher expressed impermissible views, no one cared because the clinics were designated a forum for open controversial discussions. *Id*. at 297, ¶ 10. This was expressly part of the clinic experience. Id.

---

[2] Until recently, this was a near monopoly of censorious campus leftists.  See e.g. Daniel J. Solomon, Ben Shapiro: Yeshiva University Just Using Me to Look Righteous, Dec. 15, 2016, Forward, avail. at https://forward.com/fast-forward/357196/ben-shapiro-yeshiva-university-just-using-me-to-look-righteous/

## II.    INJUNCTION IS WARRANTED TO RETURN TO LAST UNCONTESTED STATUS QUO

The State argues that a TRO/PI should be denied because Defendants have already harmed Fisher by reporting her to the TBLE. They also argue, without facts or authority, that this does not cause ongoing, irreparable harm. ECF No. 24 at Page ID 556. In other words, the State argues that Defendants' escalating retaliation manufactures a new *status quo* from which there is no turning back. See e.g.  Defs. Appx. 85-86.

First of all, Defendants' haste demonstrates causation and exemplifies why an injunction is necessary. If not checked, Defendants will stop at nothing to ruin Fisher.. See e.g. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (holding temporal proximity can prove causation in First Amendment retaliation cases).

But more important here, Defendants do not get to manufacture the "status quo" they prefer. The Fifth Circuit's "more accurate description of the status quo is the 'last uncontested status of parties.'" *Doe v. Tex. Christian Univ. et al.*, 601 F. Supp. 3d 78, 96 (N.D. Tex. 2022). In *Tex. Christian Univ.*, this Court entered a TRO revoking an already imposed university suspension of a student. This was because "preserving the status quo requires lifting the suspension so that the Court may consider the merits with minimal harm to both parties." *Id.*

Here, the "last uncontested status" dates to the time prior to Defendants' investigation and eventual Honor Council to punish Fisher's protected speech.[3]  Def's Appx at 92. See also *Domain Prot., LLC v. Sea Wasp, LLC*, Civil Action No. 4:18-cv-792, 2019 U.S. Dist. LEXIS

---

[3] Defendants correctly point out that Dean Nowlin's escalating retaliation renders that part of Fisher's requested relief obsolete, in which Fisher prays the Court to enjoin Defendants from entering a reprimand. ECF No. 4 at 24. Yet Fisher should be allowed to request additional injunctive relief directing Defendants not only to annul all disciplinary action against her but to notify the Texas Board of Law Examiners that Dean Nowlin's retaliatory report is retracted pending outcome of this case.

118781, at *10 (E.D. Tex. July 17, 2019) (quoting *Yeargin Const. Co. v. Parsons & Whittemore Ala. Mach. & Servs. Corp.*, 609 F.2d 829, 831 (5th Cir. 1980)).

Finally, Fisher "can seek a preliminary injunction that alters the status quo, even if such requests require a stronger showing." *Domain Prot., LLC*, 2019 U.S. Dist. LEXIS 118781, at *10. This higher, "mandatory injunction" standard is "a clear entitlement to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990) (explaining "mandatory" injunction standard). Fisher satisfies this burden too, even if the Court applied the "mandatory injunction" standard—which it should not.

III.    THE FIFTH CIRCUIT HAS SETTLED WHETHER REGENTS ARE PROPER DEFENDANTS

The State of Texas already lost on the issue of whether Regents who govern (or more properly renege on their duty to govern) its public universities are proper defendants under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). See *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) (holding *Ex parte Young* "rule is based on the legal fiction that a sovereign state cannot act unconstitutionally, and therefore, when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit") (quoting *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam)).

In *Jackson*, during the furor over George Floyd's murder, a University of North Texas (UNT) professor had the temerity to argue that Western classical music is not "racist." For this innocuous viewpoint, left-wing colleagues and graduate students pounced, demanded Jackson be fired for "racist actions" (i.e. speech), and insisted that UNT close a journal that Jackson edited. UNT obliged by canceling the journal. *Id.* at 365. Jackson sued to halt this censorship. *Id.* at 368. All the while, the UNT Regents did nothing and asserted all the defenses that Defendants raise here. *Id.* The Fifth Circuit held that the UNT Regents "nowhere deny that their governing authority satisfies the [Fifth Circuit's] 'scintilla of enforcement' standard [for *Ex parte Young*

4

jurisdiction]; in fact, they never even acknowledge that standard in their opening brief" and

"sovereign immunity does not bar Jackson's First Amendment claim against the Board

defendants."[4] *Id.* at 367-368 (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir.

2019)).

Furthermore, Defendants play a common cat and mouse game in state-actor lawsuits.

Defendants claim, "most" or "some" but never all Defendants, are shielded by sovereign

immunity. ECF No. 24 at Page ID 541. They argue that "some" have no direct connection to the

acts and omissions that cause Fisher's prospective harm, but "some" lack authority to implement

the requested relief. They do not identify who sits in the space between the empty suits at the top

and the supposedly powerless bureaucrats below.

Somebody runs Texas Tech's School of Law, however. Fisher only needs one *Ex parte*

*Young* Defendant to proceed. See also *Healthy Vision Ass'n*, 138 F.4th at 401 (dismissing all but

one *Ex parte Young* defendant but affirming PI). Defendants' Appendix shows Dean Nowlin has

authority to issue disciplinary proclamations about students to the TBLE, is directly involved in

trying to ruin Fisher's future career, and can implement  at least some of the requested

prospective injunctive relief. Def's Appx at 43-46. Others' connections may be proved in

discovery, or the Court can order the parties to resolve this issue by meeting and conferring.

Finally, Defendants' qualified immunity defense is irrelevant to a plaintiff's claims for

injunctive relief. *Escobarrivere v. Whitaker*, 2022 U.S. App. LEXIS 33223, at *13 (5th Cir.

2022); see also *Yates v. Stalder*, 217 F.3d 332, 333 n.2 (5th Cir. 2000) ("qualified immunity is

not a defense to Plaintiffs' claims for declaratory and injunctive relief"). Fisher will refute

---

[4] Indeed, here the Texas Tech Regents are obligated to "protect intellectual exploration and academic freedom," Tex. Ed. Code § 51.354(b)(5), and enforce § 51.9315(b) (expressing Texas commitment to Protected Expression on Campus, including " recognizing freedom of speech … as central to the mission of institutions of higher education … including to listen to or observe the expressive activities of others").

Defendants' qualified immunity defense in her objection to their Motion to Dismiss, the deadline for which is properly May 18, 2026, under N.D.Tex. L.R. 7.1(e).

## IV.    DEFENDANTS SUPPRESS STUDENT SPEECH—NOT EMPLOYEE SPEECH

Defendants ask this Court to apply the wrong standard by treating Plaintiff as a public employee rather than a student. ECF No. 24 at Page ID 545. If Fisher were a public employee, the controlling case would be *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (restricting public-sector employee speech). By applying *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) rather than *Garcetti*, Defendants concede, without explanation, that this is an education case because the Fifth Circuit instructs that *Pickering* applies to academic speech. *Buchanan v. Alexander*, 919 F.3d 847, 852–53 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 432 (2019).

Fisher has already set forth "the unmistakable holding of this [Supreme] Court for almost 50 [and since *Tinker*, now 100] years" that public university students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969). The expression of ideas—what Defendants relabel "actions"—"no matter how offensive to good taste"—may not be suppressed based on "conventions of decency." *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670, 93 S. Ct. 1197, 35 L. Ed. 2d 618 (1973). Under these principles, a university may restrict student speech only in limited circumstances.

Furthermore, Defendants' own cases indicate that more than speculative harm is required, even for students placed in externships approximating employment: "the government cannot rely on purely speculative allegations that certain statements caused or will cause disruption to justify the regulation of employee speech." *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996) (internal quotations omitted). Discipline may not rest on disagreement with the speech,

6

generalized concerns, or speculative predictions of disruption or harm, which holds ***even if*** this were a *Pickering* case, which it is not.  See e.g. *Bevill v. Wheeler*, 103 F.4th 363, 375-76 (5th Cir. 2024) ("real, not imagined, disruption is required") (internal quotations omitted).

A crackdown on student expression requires an even stronger showing.  See *Shamloo v. Mississippi State Board of Trustees*, 620 F.2d 516, 521 (5th Cir. 1980) (student speech may be restricted only where it "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school" or collides with the rights of others). This test is satisfied when an actual disruption occurs, or the record contains facts "which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 397 (5th Cir. 2015). This "requires a specific and significant fear of disruption, not just some remote apprehension of disturbance." *Id.* Fisher's speech of little more than 30 seconds in Prof. Stephens office and 10 minutes in Prof. Metze's office does not rise to this level.

To recast Fisher as a mere employee, Defendants invoke out-of-jurisdiction cases that address student interns, residents, or the like placed with external businesses or non-profit entities beyond the university, which is not the case here. See *Watts v. Florida International University*, 495 F.3d 1289 (11th Cir. 2007) (Master of Social Work student placed in mental health facility for practicum); *Andersen v. McCotter*, *supra* (student intern volunteer with Department of Corrections); *Snyder v. Millersville Univ.*, No. 07-1660, 2008 LX 50460 (E.D. Pa. Dec. 3, 2008) (student teacher placed in regional high school for full semester). Or Defendants invoke cases where plaintiffs were unambiguous employees, which Fisher is not. See *Nixon v. City of Hous.*, 511 F.3d 494 (5th Cir. 2007) (plaintiff city patrol officer); *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (plaintiff officers teaching in police academy).

7

Fisher did not, for example, speak during fieldwork, in a court clerkship, or in a private law firm. She paid tuition, enrolled in the criminal clinics as part of her legal education, and earned graded academic credit. Fisher spoke in the clinical suites with her fellow students, and she sought mentorship from her professors, only to have Dean Nowlin and Director Morgeson pose as thought police and invade *their* academic freedom as well as Fisher's. Fisher was never paid. *Cf. Andersen*, 100 F.3d at 726 (enumerating indicia of employment relationship).

Defendants' authority therefore misses the mark. At Texas Tech, law faculty, students, and outside speakers alike mock the dead and curse, as undoubtedly do practicing attorneys throughout the Texas bar, and in any other state, however indecorous that may be. Thus, even if "an interest in teaching professionalism may sometimes legitimately curtail a student's speech, the interest evaporates entirely if the College's professionalism regulations bear little resemblance to those of the profession." *Diei v. Boyd*, 116 F.4th 637, 646-47 (6th Cir. 2024). *Cf. Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) (medical school could deny degree due—not to speech— but to unprofessionalism based on actual conduct, e.g. tardiness, sexual harassment, bad grades, and drunk driving).

This is not a case, as chronicled by conservative Manhattan Institute scholar Ilya Shapiro and others, where feral law students at T14 law schools run amok on campus and impose a "heckler's veto."[5] By expressing her viewpoints, Fisher muzzled no one. Rather, it is Defendants who use the power of the state of Texas to muzzle only Fisher. So doing, they have chilled speech throughout the law school. Therefore, as set forth in Fisher's main brief, Plaintiff's speech must be evaluated under First Amendment principles governing student expression under *Tinker*, not *Pickering*. And under that standard, she is overwhelmingly likely to prevail.

---

[5]See e.g. Ilya Shapiro, Lawless: The Miseducation of America's Elites (Broadside Books), 80-90 (discussing "heckler's veto" imposed on speakers at Yale University Law School).

### V.  FISHER PREVAILS EVEN IF *PICKERING* APPLIES, WHICH IT DOES NOT

Defendants concede that Plaintiff's speech involved a matter of public concern (ECF No. 24 at Page ID 545); and that she suffered an adverse action (ECF No. 24 at Page ID 547). Thus, if *Pickering* applies instead of *Tinker*, which it does not, the only issues are whether Fisher's interests outweigh Defendants' and whether her speech was a "substantial" or "motivating" factor in the adverse employment action. *Pickering*, 391 U.S. at 568; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Mislabeling expression as "action" or "conduct" does not sweep the causal connection under the rug. Fisher spoke at the end of the day, for a duration of perhaps 10 minutes with Professor Metze and only 30 seconds with Professor Stephens, with no clients present. The limited number of individuals in the office were all discussing the same thing (*contra* Morgeson). Beyond Defendant Morgeson's asseverations, no evidence suggests Fisher's conduct disrupted clinic operations or interfered with client service. The weight of the evidence indicates that conservative students were not even bothered. See e.g. M. Wright "wasn't upset about" Fisher's speech (FA at 66 (1:12:37-43)); A. Bomar stating, "I don't think it was celebratory at all" and "I don't think she was saying it loud," in reference to Fisher's speech (*id.* at 86 (1:49:22, 1:52:47)); J. Gomez testifying to uncomfortable general atmosphere, rather than Fisher's speech specifically (*id.* at 98 (2:11:48)). Fisher will not reprise her main brief (ECF No. 4) or her Affidavit here. FA at 1-12. Suffice it to say that the chilling effect of repressing student speech has disrupted the clinics far more than Ellie Fisher. See e.g., Monacelli attesting to disruption (FA at 98 (2:11:48)).

Defendants cannot even clear the *Pickering* hurdle because this Court must consider how Fisher's speech, if it was employee speech, would likely generate controversy or disruption, impede the employer's performance and operations, or adversely affect the working relationships

9

necessary to the school's proper functioning.  See e.g. *Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir. 1988) (citing *Pickering v. Bd. of Educ.*, 391 U.S. at 569–573). Here, affirmative evidence shows that clinic functions continued uninterrupted and the greatest disruptor was actually Morgeson, who anointed herself some sort of hall monitor, eavesdropped on students and faculty alike, feigned fragility and sent her students home, and then proceeded to misrepresent facts to the Honor Council. No evidence suggests any client was compromised. Where there is no actual or foreseeable disruption to operations, the government's efficiency interest is minimal and cannot outweigh a public employee's interest in protected speech. *Pickering*, 391 U.S. at 568–73. Thus, the *Pickering* balance weighs in Plaintiff's favor. See e.g. *Bevill v. City of Quitman*, Civil Action No. 4:19-cv-406, 2025 U.S. Dist. LEXIS 154138, at *48 (E.D. Tex. Aug. 11, 2025) (holding, "hypothetical harms will not tip the *Pickering* scale" and "[r]eal, not imagined, disruption is required") (quotations omitted).

Finally, Defendant's argument that speech was not a substantial or motivating factor is not serious. Nowlin's report to the TBLE seethes over Fisher's noxious viewpoints, including her refusal to genuflect to conform to his own. Nowlin condemns Fisher to the TBLE for failing to "express" remorse, which is not an "action." Def's Appx at 90. It is speech. The Keffer Report focuses on her alleged statements. *Id.* at 61-62. Despite employing euphemisms like "actions and conduct," the Honor Council finds Fisher made improper "statements." *Id.* at 67, 70. Even Fisher's alleged "celebration" is expression, cognizable through speech. *Id.* at 93.

## VI.    CONCLUSION

For the foregoing reasons, the Court should issue a Temporary Restraining Order requiring Defendants to annul their disciplinary action against Fisher and inform the TBLE that any and all disciplinary outcomes against Fisher are officially retracted pending trial.

Respectfully submitted,

Michael Thad Allen (435762)
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738
mallen@allenharrislaw.com


Mark T. Mansfield
Local Counsel for Ellie Fisher
Mansfield & Mansfield, P.C.
1550 Norwood Dr.
Suite 107
Hurst, Texas 76054 817-282-3450
mark@mansfieldpc.com

11