UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ELLEN MAE FISHER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 5:26-CV-0073-X |
| | § | |
| TEXAS TECH UNIVERSITY | § | |
| SYSTEM BOARD OF REGENTS, et | § | |
| al., | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss (Doc. 44) Plaintiff Ellie Mae Fisher's (Fisher) Second Amended Complaint from Texas Tech University System Board of Regents (the "Board"); Regents Cody Campbell, Dustin Womble, Arcilia Acosta, Pat Gordon, Clay C. Cash, Tim Culp, Shelly Sweatt, Doug McReaken, Donald Sinclair, and Eli Heath (collectively, the "Regents"); and Dean Jack Wade Nowlin, Jared Gonzales, William Keffer, Larry Spain, Amy Hardberger, Allison Outenreath, and Ally Owens (collectively, the "individual Defendants"). After due consideration, the Court **GRANTS** in part and **DENIES** in part the Motion.

## I.    Factual Background

This case arises from the aftermath of the public assassination of Charlie Kirk on September 10, 2025. Plaintiff Ellie Mae Fisher (Fisher) first heard of Kirk's murder during her Race and Racism class at Texas Tech School of Law (Law School), when a student, Henry Tecssi, announced to the class that Kirk had been shot and

described him as a racist.  Students subsequently openly discussed the shooting and showed each other videos of Kirk's assassination.

After class, Fisher, who worked in the Law School's Criminal Defense Clinic, went to the clinical programs offices.  Fisher first stopped at Professor Joe Stephens's office, a clinical lecturer and public defender, and asked, "Have you heard that Charlie was shot?"  She then went to Professor Patrick Metze's office, another clinic professor, joined by fellow law students Ashanty Bishop and Bridget Pembroke.

At some point, Professor Terri Morgeson arrived and stated that Kirk had died.  This sparked a conversation between Fisher, Bishop, Pembroke, and Professor Metze about the assassination that lasted five to ten minutes.  Fisher alleges that at no point did Professor Morgeson see her celebrate, do anything unprofessional, or in any way violate the Law School's Honor Code.

Fisher subsequently left Professor Metze's office and went to a large conference room that serves as the Law School clinic faculty's offices.  She alleges that students with various viewpoints were present and discussing the events, and that she did not engage in any conduct that was not protected by the First Amendment.

Fisher alleges that the Law School nevertheless opened an investigation to determine whether she had engaged in "unprofessional conduct" in the legal clinic.

The Law School's Honor Code investigation was headed by Defendant Professor William R. Keffer, who interviewed faculty members, deans, and twelve students.  Professor Keffer's investigation resulted in allegations from Professor Morgeson and other students that Fisher had stated, "That mother fucker got shot,"

2

that she had stated she was "in the best mood ever," and that "They got him . . . This is great" in the clinic the day of the assassination.

Fisher alleges that Professor Keffer intentionally excluded exculpatory evidence offered by other students from his report and altered student statements to put her in a worse light.

Months later, the Texas Tech Honor Council—comprising the following Defendants: Professor Larry Spain, Professor Amy Hardberger, Associate Dean and Professor Allison Outenreath, and student Ally Owens—held an Honor Council hearing to determine whether Fisher's conduct violated the Honor Code. Fisher alleges that the Honor Council failed to properly apply the clear-and-convincing-evidence standard required by school policy and that she explained that her conduct was protected by the Constitution and school policies. Despite these arguments, Fisher alleges that Professor Morgeson lectured her about the consequences of her alleged speech.

The Honor Council eventually determined that Fisher had violated the Honor Code's Professional Duties requirement by "failing to uphold professional or fiduciary obligations including, but not limited to, performance related to clinical programs." To support that conclusion, the Honor Council found that: (1) Fisher had made statements in the clinic offices that could be considered celebratory; (2) Fisher was loud, happy, and celebratory; (3) students and faculty were concerned about the appropriateness of her response; (4) Fisher's conduct could have created conflict in the clinic's professional setting; and (5) the clinic's operations were adversely affected.

Fisher alleges that she is the only student who has been investigated for her speech on September 10.   Other non-black students who spoke about the assassination—including Henry Tecssi, Madison Wright, Allison Monacelli, and Bridget Pembroke—were not investigated.

The Honor Council then recommended to Defendant Dean Nowlin that Fisher receive a written letter of reprimand from the Dean of the Law School that would be placed on her permanent school record.  Fisher appealed to Defendant Assistant Dean Gonzales, but her appeal was denied.

## II.    Procedural Background

Fisher subsequently filed this lawsuit.   She immediately moved for an emergency temporary restraining order and preliminary injunction to prevent Dean Nowlin from entering a reprimand and to annul all disciplinary action against her.[1] The same day the case was assigned to this judge, the Court ordered her to serve Defendants and ordered the Defendants to respond within seven days of service.[2]

Four days later, Fisher requested summonses from the clerk's office.[3]  But before then, Dean Nowlin filed the reprimand, reported it to the Texas Board of Law Examiners, and filed his recommendation against her admission to the State Bar of Texas.[4]   The Court   denied   Fisher's   motion   for   a   temporary   restraining

---

[1] Doc. 4 at 24.

[2] Doc. 8.

[3] *See* Doc. 16.  The clerk's office issued the summonses that day.  *See* Doc. 17.

[4] Doc. 24 at 6–7.

order/preliminary injunction because the Eleventh Amendment and *Ex parte Young* foreclosed her requested remedy.[5]

Fisher's live complaint asserts claims under 42 U.S.C. § 1983 for First and Fourteenth Amendment retaliation and Title VI of the Civil Rights Act of 1964.[6] The Individual Defendants, the Regents, and the Board then all moved to dismiss her Second Amended Complaint.[7]

### III.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[8] To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11] "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[5] Doc. 27.

[6] Doc. 28.

[7] Doc. 44.

[8] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020) (per curiam).

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[12]

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and accept all facts pleaded in the complaint as true.[13]   That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[14]

## IV.   Analysis

"Jurisdiction is always first."[15]  So before reaching the merits, the Court must first assure itself of its jurisdiction over both the claims and remedies.[16]

### A. Jurisdiction

The Defendants raise three jurisdictional arguments: (1)  Fisher lacks standing to receive injunctive relief from future violations of the First and Fourteenth Amendment, future sanctions, or future reporting of sanctions; (2) Fisher only has standing to seek an expungement of her student record from Dean Nowlin, Assistant Dean Gonzales, and the Regents; and (3) sovereign immunity forecloses (a) Fisher's recovery of monetary damages from the Board under the First and Fourteenth Amendment and (b) expungement from Dean Nowlin, Assistant Dean Gonzales, and the Regents.  The Court takes each in turn.

---

[12] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[13] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[14] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023).

[15] *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (cleaned up)).

[16] *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (cleaned up).

1.  Standing to Receive Future Relief

All plaintiffs must "satisfy the irreducible constitutional minimum of Article III standing."[17]  Namely, the plaintiff must "not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury."[18]  "[S]tanding is not dispensed in gross."[19]  That not only means that a plaintiff must have standing for each claim they bring, but they must have standing "for each form of relief that they seek."[20]

"[A] plaintiff seeking injunctive relief must show a real and immediate threat of future or continuing injury apart from any past injury."[21]  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."[22]  "Allegations of *possible* future injury do not suffice."[23]  That harm may not be "conjectural or hypothetical."[24]

"The party invoking federal jurisdiction bears the burden of establishing standing" and "each element must be supported in the same way as any other matter

---

[17] *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

[18] *Id.* (cleaned up).

[19] *Murthy*, 603 U.S. at 61 (cleaned up).

[20] *Id.* (cleaned up).

[21] *Aransas Project v. Shaw*, 775 F.3d 641, 663 (5th Cir. 2014) (per curiam).

[22] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

[23] *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022) (cleaned up).

[24] *Colgrove v. Collins*, 62 F.3d 391, 391 (5th Cir. 1995) (cleaned up).  *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."[25]

Fisher asks the Court to "[e]njoin Defendants from any further violation of Plaintiff Ellie Mae Fisher's rights under the First and Fourteenth Amendments" and "[e]njoin any sanction to be imposed on Plaintiff Ellie Mae Fisher by the Texas Tech School of Law and further enjoin any report of any sanction."[26]  Accordingly, it is her burden to establish that there is a real and immediate threat of violations of her First or Fourteenth Amendment rights, further sanctions, or reporting of sanctions.[27]  She has not done so.

First, Fisher has graduated from Texas Tech School of Law.  And she has not pled any facts suggesting that *any* of the defendants are imminently threatening to sanction her or report a sanction.    Second, Fisher's allegations of past unconstitutional conduct are insufficient under *City of Los Angeles v. Lyons*.[28]  In *Lyons*, the Supreme Court stated that "past wrongs were evidence" of the likelihood of future injury, but they "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."[29]  So even accepting Fisher's legal conclusions that her First and Fourteenth Amendment rights were

---

[25] *Susan B. Anthony List*, 573 U.S. at 158 (cleaned up).

[26] Doc. 28 at 39.

[27] *See Susan B. Anthony List*, 573 U.S. at 158; *Aransas Project*, 775 F.3d at 663.

[28] 461 U.S. 95 (1983).

[29] *Id*. at 102–03 (cleaned up).

violated, that alone is insufficient to satisfy the irreducible constitutional minimum of standing for injunctive relief from future constitutional violations or sanctions.

The Court **DISMISSES WITHOUT PREJUDICE** her request for injunctive relief from future constitutional harms and sanctions.

2. Standing to Receive Expungement

A plaintiff has the burden to show that she has standing "for each form of relief that [she] seek[s]."[30]  And "must show a substantial likelihood that the requested relief will remedy the alleged injury in fact."[31]

As the Court previously held in the *Ex parte Young* context, the only defendants who can expunge Fisher's student record are Dean Nowlin, who issued and sent the reprimand to the Texas Board of Law Examiners; Dean Gonzales, who has appellate review of Honor Code violations; and the Regents.[32]  Because the other Individual Defendants lack authority to expunge Fisher's record, they cannot provide the requested relief.  So Fisher lacks standing to seek the expungement from Professor Keffer, Professor Spain, Professor Hardberger, Professor Outenreath, and Ally Owens.

The Court **DISMISSES WITH PREJUDICE** Fisher's requested injunctive relief against Professor Keffer, Professor Spain, Professor Hardberger, Professor Outenreath, and Owens.

---

[30] *Murthy*, 603 U.S. at 61 (cleaned up).

[31] *El Paso Cnty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (cleaned up).

[32] *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023) (holding that board of regents defendants have direct governing authority over school officials that have engaged in First Amendment violations).

3. Sovereign Immunity

"Sovereign immunity bars private suits against nonconsenting states in federal courts."[33]  "This immunity extends both to the state and to agencies acting under its control."[34]  It also "precludes suits against state officials in their official capacities."[35]  That said, there are two primary exceptions.  "First, Congress may expressly abrogate state sovereign immunity."[36]  Second, *Ex parte Young* "permits suits for prospective relief against state officials acting in violation of federal law."[37]

The Court must consider whether it has jurisdiction to (1) award damages or order the Board to annul Fisher's student record, (2) order Dean Nowlin, Assistant Dean Gonzales, and the Regents to expunge Fisher's student record, and (3) declare that "Defendants have violated" Fisher's "rights under the First and Fourteenth Amendment" and "Title VI of the Civil Rights Act of 1964."[38]

Congress has "expressly abrogated States' sovereign immunity against suits brought to enforce Title VI."[39]  Title VI thus stripped the Board, as a state agency, of its sovereign immunity.  As a result, both injunctive relief and damages are available against the Board under Title VI.[40]  But "Title VI permits suits only against public or

---

[33] *Id.* at 367 (cleaned up).

[34] *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 680 (5th Cir. 2020) (cleaned up).

[35] *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (cleaned up).

[36] *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020).

[37] *Id.* (cleaned up).

[38] Doc. 28 at 39.

[39] *McCardell v. U.S. Dep't of Hous. and Urb. Dev.*, 794 F.3d 510, 522 (5th Cir. 2015) (cleaned up).

[40] *See id.*

10

private entities receiving funds and not against individuals."[41]  Accordingly, Title VI's abrogation of state sovereign immunity only applies to the Board, not the individual Defendants or Regents.  And that abrogation is limited to Fisher's Title VI claim.

Because Title VI does not authorize relief against individuals, Fisher's only path to injunctive relief against the Individual Defendants is *Ex parte Young*.[42]  As the Court has explained in previous orders, "*Ex parte Young* created a narrow doorway through the sovereign immunity defense" and "[t]o turn the key on the *Ex parte Young* door, a plaintiff must sue the right defendants and ask for the right remedy."[43]  And the right defendants, here, are Dean Nowlin, Assistant Dean Gonzales, and the Regents because they are the only defendants with "a scintilla of enforcement" authority.[44]  But Fisher's request that the Court "order Defendants to expunge" Fisher's student record is "quintessentially retrospective" relief and out of bounds under *Young*.[45]

The Court **DISMISSES WITH PREJUDICE** Fisher's requested injunctive relief against Dean Nowlin, Assistant Dean Gonzales, and the Regents.

4. Declaratory Judgment

Fisher's request for declaratory judgment faces similar hurdles.  Sovereign immunity forbids her request for declaratory judgment that the Board violated her

---

[41] *Muthukumar v. Kiel*, 478 Fed. Appx. 156, 159 (5th Cir. 2012).

[42] *Green Valley*, 969 F.3d at 471 (cleaned up).

[43] *Jackson*, 82 F.4th at 367.

[44] *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (cleaned up).

[45] *Green Valley*, 969 F.3d at 473.

First and Fourteenth Amendment rights.[46]  But she may, if she succeeds on her Title VI claim, receive declaratory judgment that the Board violated Title VI because Title VI abrogates sovereign immunity.[47]  But Title VI does not permit such a remedy against the individual Regents or the Individual Defendants like is does for the Board.[48]

And, like her request for injunctive relief, *Ex parte Young* prohibits declaratory judgment that the Individual Defendants and the Regents "violated [her] rights under the First and Fourteenth Amendment" because such relief is also retroactive.[49]

So the Court **DISMISSES WITH PREJUDICE** her first request for declaratory judgment under the First and Fourteenth Amendments as to all Defendants.  The Court also **DISMISSES WITH PREJUDICE** her request for declaratory judgment under Title VI as to the Individual Defendants and the Regents.  There is jurisdiction over her claim for a declaratory judgment that the Board violated Title VI.

**B. Merits**

Turning to the merits, Fisher's remaining remedies are: (1) declaratory judgment that the Board violated Title VI; (2) expungement of Fisher's student record under Title VI; (3) damages against the Individual Defendants for violations of her

---

[46] *See McCardell*, 794 F.3d at 522.

[47] *McCardell*, 794 F.3d at 522 (cleaned up).

[48] *See Kiel*, 478 Fed. Appx. at 159.

[49] *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) ("The backwards-looking, past-tense declaratory judgment issued by the district court is tantamount to an award of damages for a past violation of law, even though styled as something else." (cleaned up)).

First and Fourteenth Amendment rights; and (4) damages against the Board for violations of Title VI.

The Individual Defendants raise qualified immunity as a defense to Fisher's First and Fourteenth Amendment claims, while the Board argues that Fisher has failed to plead a Title VI claim under Federal Rule of Civil Procedure 12(b)(6). The Court takes each in turn.

1. Qualified Immunity

The Court first considers the Individual Defendants' qualified immunity defense. Qualified immunity shields government officials from civil liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known."[50] "[G]overnment officials," are given "breathing room to make reasonable but mistaken judgments" unless they are "plainly incompetent or . . . knowingly violate the law."[51]

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[52] The plaintiff must show: (1) the violation of a constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[53]

---

[50] *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (cleaned up).

[51] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up).

[52] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (cleaned up).

[53] *See Connelly v. Tex. Dep't of Crim. Just.*, 484 F.3d 343, 346 (5th Cir. 2007).

13

"Therefore, unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity."[54]  "The burden here is heavy" because a "right is clearly established only if preexisting precedent has placed the constitutional question beyond debate."[55]  And even if the plaintiff demonstrates the violation of a clearly established right, "the official is entitled to qualified immunity if his conduct was objectively reasonable."[56]  A state actor is not deprived of immunity merely because she made a decision that was "constitutionally deficient" or that "misapprehended the law governing the circumstances she confronted."[57]

To be sure, "it is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established."[58]  "General statements of the law . . . may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."[59]  That said, the "unlawfulness of the challenged conduct must be beyond debate."[60]  And that is a "rare" occurrence.[61]

---

[54] *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

[55] *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1165 (5th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[56] *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).

[57] *Taylor v. Rojas*, 592 U.S. 7, 8 (2020).

[58] *Aguirre v. City of S.A.*, 995 F.3d 395, 415 (5th Cir. 2021).

[59] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cleaned up).

[60] *Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up).

[61] *Id.*

The Court exercises its discretion to begin with step two of qualified immunity because Fisher cannot show that the alleged constitutional violation was clearly established.[62]

To begin with, there is no binding precedent that "squarely governs the specific facts at issue" or "placed the constitutional question beyond debate."[63]  Cases such as *Tinker v. Des Moines Independent School District*[64] and *Papish v. Board of Curators of University of Missouri*,[65] do not squarely govern the conduct at issue nor put the constitutional question beyond debate because Fisher's Complaint does not concern student speech in the form of an arm band or an allegedly obscene cartoon.

So the obviousness exception is the ballgame for Fisher on step two.  And again, she does not meet it.  It is "not beyond debate" that the Individual Defendants could not reprimand Fisher for her speech made within the law school clinic and professors' offices.  To conclude otherwise, the Court would have to hold that it was objectively unreasonable for the Individual Defendants to believe that (1) the legal clinic was not a public forum, (2) Fisher's participation in the legal clinic altered the First Amendment protections afforded to her, or (3) the reprimand was narrowly tailored to serve a compelling state interest.  None of those conclusions were beyond debate.

It is possible that the Individual Defendants misapprehended the law, and their conclusions may ultimately prove constitutionally deficient.    But the

---

[62] *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[63] *Harmon*, 16 F.4th at 1165–66 (cleaned up).

[64] 393 U.S. 503 (1969).

[65] 410 U.S. 667 (1973).

constitutional question presented by these facts was not beyond debate. So the obviousness exception to step two does not save Fisher's claims.

And even if it the claims did fall under the obviousness exception, the en banc Fifth Circuit has indicated that the obviousness exception does not apply to First Amendment cases.[66] To be sure, "[i]t would make a mockery of our rights to grant qualified immunity just because no one in government has yet to be abusive enough to commit that particular violation."[67] But this Court is an inferior court, and is bound by the law of the circuit.[68]

Accordingly, the Individual Defendants are entitled to qualified immunity and, the Court must **DISMISS WITH PREJUDICE** her First Amendment claim against the Individual Defendants and Regents.

2. Title VI

Next, the Court turns to whether Fisher has sufficiently pled a Title VI claim. To state a claim under section 2000d, a plaintiff must allege: (1) intentional race or national origin discrimination, and (2) the defendant receives federal financial

---

[66] The Fifth Circuit reached this conclusion in *Villareal v. City of Laredo*, 94 F.4th 374, 395 (5th Cir. 2024) (*Villareal I*). The Supreme Court vacated and remanded *Villareal I* back to the Fifth Circuit "for further consideration in light of *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam)." *Villareal v. Alaniz*, 145 S.Ct. 368 (2024). Even so, the Fifth Circuit interpreted the Supreme Court's remand narrowly to only require the application of *Trevino* and held that its prior opinion was "superseded only to this extent." *Villareal v. City of Laredo*, 134 F.4th 273, 276 (5th Cir. 2025) (en banc) (*Villareal II*). Accordingly, the Fifth Circuit's conclusion in *Villareal I,* that there is no "obviousness" exception to step two of the qualified immunity analysis for First Amendment cases, remains binding precedent. *Villareal II*, 134 F.4th at 276; *see also McMurry v. Weaver*, 142 F.4th 292, 305 (5th Cir. 2025) (Ho, J., concurring).

[67] *McMurry*, 142 F.4th at 304 (Ho, J., concurring). *See also Villareal I*, 94 F.4th at 401–06 (Higginson, J., dissenting), *id.* at 406–09 (Willett, J., dissenting), *id.* at 409–23 (Ho, J., dissenting).

[68] *Cf. United States v. Cockerham*, 162 F.4th 500, 510 (5th Cir. 2025) (Ho, J., concurring) (noting higher courts can adjust or amend their own precedents while "[i]nferior courts have no such luxury").

16

assistance.[69]  The Board does not contest that it receives federal financial assistance. So the inquiry turns on whether Fisher adequately pled intentional race discrimination.

As far as the Court can tell,[70] Fisher raises three theories of Title VI liability: (1) disparate treatment, (2) racially motivated suppression of evidence, and (3) deliberate indifference.[71]

At the Rule 12(b)(6) stage, a plaintiff need not submit evidence to establish a prima facie case of disparate treatment under *McDonnell Douglas*; she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible."[72]  And when a plaintiff relies on circumstantial evidence, as Fisher does, to prove intentional discrimination, she "will ultimately have to show that she can satisfy the *McDonnell Douglas* framework" and that framework is "helpful to reference . . . when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of a disparate treatment claim."[73]

---

[69] *Anyadike v. College*, 2016 WL 7839183, at *9 (N.D. Tex. Mar. 14, 2016) (O'Connor, J.).

[70] Had Fisher drafted her pleadings for federal court—instead of for clout—the Court would have a better understanding of her precise theories of liability.

[71] Fisher's complaint could be construed to tee-up a Title VI retaliation claim, but the Fifth Circuit has not expressly adopted that theory of Title VI liability.  *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 n.4 (5th Cir. 2020).

[72] *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (cleaned up).

[73] *Id.* (cleaned up).

17

Under *McDonnell Douglas*, to establish a prima facie case of discrimination, the plaintiff must allege facts sufficient to show that she was treated less favorably than others outside her class.[74]

Fisher's Complaint easily meets this standard.  She is a member of a protected class; she alleges that her conduct met the Law Schools's expectations; the Honor Council investigated her and Dean Nowlin reprimanded her; and Dean Nowlin did not reprimand other non-Black students such as Henry Tecssi, Madison Wright, Allison Monacelli, and Bridget Pembroke.[75]  While the Board argues Fisher's conduct did not meet the Law Schools's expectations, at this stage, the Court must accept Fisher's allegations as true.[76]

Because Fisher adequately pled disparate treatment, the Court need not reach her other theories.[77]  Accordingly, the Court **DENIES** the Motion to Dismiss as to Fisher's Title VI claim.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Defendants' Motion.  Fisher's First Amendment claim is **DISMISSED WITH**

---

[74] *Id.* (cleaned up).

[75] Doc. 28 at 35–36.

[76] *Collins*, 224 F.3d at 498.  Even so, the Court has questions as to whether Ashanty Bishop is a valid comparator.  As the reply brief notes, Bishop was the Secretary of the Black Law Student Association at the time of the incident.  Doc. 53 at 7 n.1.  Such fact disputes are not for resolution at this stage.  But the Court reminds Fisher's counsel of their duty of candor to the Court under Federal Rule of Civil Procedure 11, which includes a duty to update the Court when new information is discovered that makes information in the pleadings inaccurate.

[77] Because Fisher's Title VI is going forward, the Court declines to speculate on how to evaluate circumstantial evidence of racially-motivated suppression of evidence or Fisher's deliberate indifference theory.  The Court will fully evaluate those allegations and the facts supporting them at a later stage in this litigation.

**PREJUDICE**.  Only her Title VI claim against the Board for declaratory judgment, expungement, and monetary damages may go forward.

**IT IS SO ORDERED** this 14th day of August, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE